UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                       :

FREDERICK BOWERS,               :     Docket No. 08-civ-01309
                                         :

                                       :     <u>COMPLAINT</u>

                     Plaintiff,        :

                                         :

               -v.-               :

                                       :

THE DEPARTMENT OF VETERANS AFFAIRS  :
NEW YORK HARBOR HEALTHCARE SYSTEM,:
and JOHN J. DONNELLAN, JR., in his official  :
capacity as Director of the Hospital and his personal:
capacity, and ARTHUR SINKMAN, M.D. and  :
JONATHAN KANE, M.D., in their personal  :
capacities,                               :
                   Defendants.     :
                                       :
----------------------------------------------------------------X

Plaintiff alleges:

<u>Introduction</u>

    1.  Plaintiff Frederick Bowers is an involuntary psychiatric patient currently retained at

the Department of Veterans Affairs New York Harbor Healthcare System, Manhattan Campus

["Manhattan VA"].   Since Tuesday, February 5, 2008, the Manhattan VA has been injecting Mr.

Bowers with the antipsychotic medication Zyprexa over his objections.  The decision to

administer medication to Mr. Bowers over his objection was made by a hospital committee, but

Mr. Bowers was not present for the committee's meeting, nor was he represented by counsel or

any other advocate.  Furthermore, although Mr. Bowers and his attorney had been told in advance

that he could appeal the committee's decision in federal court, Mr. Bowers' attorney was not

informed that the treatment decision had been rendered until three days later, thwarting her

1

ability to obtain judicial relief before the medication was administered.  The procedures utilized by the Manhattan VA in making the decision to inject Mr. Bowers with Zyprexa over his objection violated Mr. Bowers' due process rights.

2.   The VA maintains that it is not constitutionally required to provide Mr. Bowers with a hearing before administering the Zyprexa, nor is it required to adhere to the procedures prescribed by New York law for the medication of  involuntary psychiatric patients over their objections.    Mr. Bowers also alleges that the VA's failure to adhere to New York's procedures for treating psychiatric patients over their objections violates the 10th Amendment of the United States Constitution, and that the procedures utilized by the VA fail to meet minimum standards of due process under the 14th Amendment of the United States Constitution, as set forth in *Washington v. Harper*, 494 U.S. 210 (1990).

## Jurisdiction

3.   This Court has original jurisdiction over this action because Plaintiff's claims arise under the Constitution of the United States, and because Plaintiff seeks review of a decision by the VA, which is an agency of the United States government.  The jurisdiction of this Court is based upon 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702 (Administrative Procedures Act), and *Bivens v.  Six Unknown Named Agents of the Federal Bureau of Narcotics* (1971).

## Venue

4.   Venue is proper in this district under 28 U.S.C. § 1391 (b) because jurisdiction is not founded solely upon diversity of citizenship and because the events giving rise to this claim occurred in this district.

Parties

Plaintiff

5.  Plaintiff Frederick Bowers, aged 57, is a citizen of the United States and an honorably-discharged veteran of the Vietnam war, who is diagnosed with schizophrenia.

6.  Since February 5, 2008, the Manhattan VA has been injecting him with the anti-psychotic medication Zyprexa over his objections.

Defendants

7.  Defendant Department of Veterans Affairs New York Harbor Healthcare System, Manhattan Campus ["Manhattan VA"] is an agency of the United States of America and operates under federal authority (38 U.S.C. § 1701 et seq.).

8.  The Manhattan VA currently has custody of Mr. Bowers and is administering the anti-psychotic medication Zyprexa to him over his objection.

10.  Defendant John J. Donnellan, Jr. is the Director of the Manhattan VA.  He is sued in his official and individual capacities.

11.  Defendant Arthur Sinkman, M.D. is an employee of the Manhattan VA.  He currently serves as Mr. Bowers' treating doctor and supervises all aspects of his treatment.  He is sued in his individual capacity only.

12.  Defendant Jonathan Kane, M.D. is an employee of the Manhattan VA.  Dr. Kane signed the "Medication Override Note" authorizing Mr. Bowers to be involuntarily medicated, and he served on the committee that made the treatment decision.  He is sued in his individual capacity only.

3

Factual Background

13.  Mr. Bowers was involuntarily admitted to the Manhattan VA on January 19, 2008 with a diagnosis of schizophrenia.

14.  From the date of his admission, Mr. Bowers was noted by hospital staff to be refusing antipsychotic medications, stating that he had suffered adverse side effects from such medications in the past.

15.  Beginning on January 28, 2008, Mr. Bowers' treatment team began taking steps to get permission to involuntarily medicate Mr. Bowers over his objections.  On January 28th, Mr. Bowers was told that such involuntary medication was being sought.  He was told that he was entitled to legal representation from the Mental Hygiene Legal Service [MHLS] (a New York state agency charged with providing legal services to involuntary psychiatric patients), that a hospital committee would be convened to review his case and render a decision about the proposed treatment, and that if the committee decided that he should be medicated, he could appeal that decision in Federal District Court.

16.  On January 30th, with the help of hospital staff, Mr. Bowers contacted MHLS attorney Ashley Greene.  After speaking with Mr. Bowers, Ms. Greene called Mr. Bowers' treating doctor and counsel for the Manhattan VA.  Both of these persons informed her that because the Manhattan VA is federally operated, New York's procedures for the involuntary medication of psychiatric patients (which require, among other things, a prior court hearing), are not followed by the Manhattan VA.

17.  Counsel for the VA conceded, however, that New York law governs the involuntary *commitment* of such patients, and that proceedings challenging a VA patient's involuntary

4

commitment (as opposed to treatment) are adjudicated by New York state courts. *See* NY Ment. Hyg. L. 79.29.

18. On Friday, February 1st, Mr. Bowers made a request, pursuant to New York state law, for a hearing challenging his involuntary commitment to the hospital. The hearing was scheduled for Tuesday, February 5th.

19. Also on Friday, February 1st, Ms. Greene spoke with Mr. Bowers' treating doctor, Dr. Arthur Sinkman, about the proposed involuntary treatment. She informed him that she wished to be present when the hospital committee met to make its decision about Mr. Bowers' treatment. While Dr. Sinkman expressed reservations about Ms. Greene's presence, he told her that the hospital "couldn't refuse" her request and that he would contact her to tell her when the committee would be meeting.

20. Dr. Sinkman noted his conversation with Ms. Greene in Mr. Bowers' medical chart, specifying that "we will be in touch with his attorney" regarding the involuntary medication.

21. On Monday, February 4th, Ms. Greene went to the Manhattan VA. There, she met with Mr. Bowers, spoke with the attending resident and nurse, and retrieved a copy of Mr. Bowers' medical chart. Ms. Greene left at approximately 2:15pm.

22. At 3:58pm on February 4th, Dr. Jonathan Kane placed a "Medication Override Note" in Mr. Bowers' chart. In its entirety, the note read:

> The committee members have reviewed the clinical material and agree that this patient suffers from a severe mental illness, chronic paranoid schizophrenia, which has severely impaired the patient's ability to make a reasoned decision regarding the likely benefits from antipsychotic medication which outweigh any possible side-effects of such medication. Appropriate liquid or dissolving wafer antipsychotic oral medication or appropriate intramuscular medication if oral meds are refused are clinically appropriate.

The note does not indicate who the other members of the committee were. Nor does it specify what medications are permitted, or in what dosages.

23. Neither Ms. Greene nor Mr. Bowers were notified of the date or time of the committee's meeting.

24. Neither Ms. Greene nor Mr. Bowers were notified that a treatment decision had been made by the committee, or of the substance of that treatment decision.

25. On Tuesday, February 5th, Mr. Bowers, represented by Ms. Greene, appeared in state court to challenge his involuntary commitment at the Manhattan VA. This hearing was held before the N.Y. Supreme Court, Special Term (Davis, J.). Dr. Sinkman testified on behalf of the Manhattan VA, and the court determined that Mr. Bowers was properly committed to the hospital due to his current mental illness.

26. Dr. Sinkman did not then tell Ms. Greene that the committee had issued its treatment decision.

27. Following the hearing, Mr. Bowers was returned to the Manhattan VA. There, he was administered an injection of Zyprexa in accordance with the committee's decision.

28. According to the notes in his hospital chart, the Manhattan VA intends to continue to administer daily doses of Zyprexa to Mr. Bowers by injection, notwithstanding his objection.

29. The individual's interest in avoiding unwanted psychotropic medication has variously been described as "significant" (*Washington v. Harper*, 494 U.S. 210, 221 (1990)) or "fundamental," (*Rivers v. Katz*, 67 N.Y.2d 485, 492 (N.Y. 1986)). Indeed, the right to determine the course of one's own medical treatment is a part and parcel of "the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Vitek v. Jones*, 445 U.S.

480, 492 (1980) (*citing Ingraham v. Wright*, 430 U.S. 651, 673 (1977)).

30.   There is no federal statute or regulation that expressly provides procedures for the treatment of involuntary psychiatric patients in VA hospitals over their objections.

31.   The Manhattan VA adheres to the procedures set forth in the VA's "VHA [Veterans Health Administration] Handbook 1004.1" at pp. 14-15 (attached hereto as Exhibit A).

32.   Pursuant to the VA operating manual, when an involuntary psychiatric patient objects to a proposed course of treatment, the hospital convenes a multi-disciplinary committee to review the treatment recommendation.  Exhibit A.  If the committee agrees with the treating doctor's recommendation, the facility director must concur with that recommendation if the patient is to be administered the objectionable medications.  *Id.*

33.   Although the manual states that "[a]dministration of psychotropic medication to an involuntarily committed patient against the patient's (or surrogate's) wishes must meet Constitutional due process requirements," the manual gives no further guidance about what due process requires.  *Id.*

34.   The manual does not specify what, if any, notice must be given to the patient, or what, if any, role the patient or his representative may play in the committee's deliberations.  *Id.* The manual gives no guidance about the patient's right to be present at the committee meeting, his right to be represented by an advocate, or his right to present witnesses or evidence on his own behalf.  *Id.*

35.   In the context of the involuntary medication of inmates in federal prisons, due process requires, at a minimum, an adversary hearing (though not necessarily a judicial hearing) at which the inmate is represented by an advocate (though not necessarily an attorney) who

understands the issues involved and is able to call and cross-examine witnesses on the patient's behalf. *Washington v. Harper*, 494 U.S. 210, 228-36 (1990); *see also United States v. Humphreys*, 148 F.Supp.2d 949, 953 (D.S.D. 2001) (reversing administrative medication decision because lay advocate assigned to represent the patient did not present patient's reasons for objecting to medication but instead testified against him).

36. While the Supreme Court did not require an attorney to represent the prison inmate in *Washington v. Harper*, where, as here, VA hospital patients are already represented by counsel, they should be permitted to be represented by counsel at the adversarial hearing that is required by due process.

37. The manual does not require that contemporaneous minutes be taken of the committee meeting or that any other formal record of the meeting be produced. Exhibit A.

38. Although the manual states that an objecting patient may appeal the facility's treatment decision in "a court of appropriate jurisdiction," the lack of a record of the meeting renders judicial review of the committee's decision impossible. *Cf. Humphreys*, 148 F.Supp.2d at 954 (requiring a "more complete record" of administrative procedure in order to permit judicial review).

39. Counsel for the VA has represented that the patient is entitled to appeal the treatment decision in federal court, and only in federal court. However, counsel for the VA has also represented that the VA will not stay its treatment decision to permit the patient to seek such an appeal.

40. In contrast to the prison policy upheld in *Washington v. Harper*, the VA manual does not provide any substantive standard for determining when treatment over the patient's objection

8

will be authorized. *Compare* Exhibit A *with Washington v. Harper*, 494 U.S. at 222-25 (prison policy satisfied due process where state was required to establish that inmate would be dangerous to himself or others if not treated, and that the treatment was in the inmate's medical interest; this standard reflected a balance between inmate's liberty interests and State's interest in prison safety); *United States v. McAllister*, 969 F.Supp. 1200 (D.Minn. 1997) (inadequate indication from existing record that requisite finding of dangerousness was made).

41. Thus, under the VA policy, a patient can be administered medication over his objection even if it is not in his medical interest, or if he poses no danger to himself or others within the hospital setting. Furthermore, the VA policy does not require the hospital committee to consider any side effects of the proposed medication or its long-term medical consequences.

42. While the Supreme Court has not specified exactly what procedures are required outside the prison setting, civilian patients in VA hospitals are entitled to no less protection than that given to federal prisoners.

43. The Manhattan VA maintains that VA hospitals are exempt, due to their status as instruments of a federal agency, from following New York state regulations governing the treatment of psychiatric patients over their objections [14 NYCRR 527.8, attached as Exhibit A].

44. Pursuant to New York's procedures, a patient on involuntary status may not be given a course of treatment over his objections without express court authorization. 14 NYCRR 527.8 (b)(4). In making this determination, New York courts generally consider, first, whether the patient has the capacity to make his own treatment decisions, and, second, "whether the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to

9

be gained from the treatment, the adverse side effects associated with the treatment, and any less intrusive alternative treatments." *Rivers v. Katz*, 67 N.Y.2d 485, 497-98 (N.Y. 1986).

45.  New York's involuntary medication procedures fully satisfy due process, as they go beyond the minimum procedures found sufficient to satisfy due process for prison inmates in *Washington v. Harper*.

First Claim

46.  Paragraphs 1-45 are repeated and realleged as if fully set forth herein.

47.  Drs. Sinkman and Kane, and their supervisor, hospital director Donnellan, violated Mr. Bowers' constitutional rights when they failed to inform Mr. Bowers or his attorney of the date and time that the hospital committee would convene to make the decision regarding treatment of Mr. Bowers over his objection.

48.  Drs. Sinkman and Kane, and their supervisor, hospital director Donnellan, violated Mr. Bowers' constitutional rights when they failed to notify Mr. Bowers or his attorney that a treatment decision had been rendered by the hospital committee, triggering Mr. Bowers' right to appeal.

49.  Drs. Sinkman and Kane, and their supervisor, hospital director Donnellan, violated Mr. Bowers' constitutional due process rights when they failed to give Mr. Bowers notice of the impending deprivation of his liberty interest in refusing medication in a meaningful time or manner; failed to provide Mr. Bowers with an administrative or judicial hearing on the proposed medication; failed to keep contemporaneous records of the "committee meeting" that took the place of any adversarial hearing; and failed to apprise Mr. Bowers or his attorney of the committee's decision.

50.  Dr. Sinkman and Kane, and their supervisor, hospital director Donnellan, further violated Mr. Bowers' constitutional rights when they injected him with the antipsychotic medication Zyprexa over his objections without first determining that he would pose a danger to himself or others if not so medicated.

51.  The procedures utilized by Drs. Sinkman and Kane, and hospital director Donnellan, in making the decision to administer Zyprexa to Mr. Bowers over his objections violated Mr. Bowers' due process rights.

Second Claim

52.  Paragraphs 1-51 are repeated and realleged as if fully set forth herein.

53.  VHA Handbook 1004.1's procedures for the "Forced Administration of Psychotropic Medication" over the objections of an involuntary patient (Exhibit A) are facially inadequate to protect the patients' due process rights.

Third Claim

54.  Paragraphs 1-53 are repeated and realleged as if fully set forth herein.

55. Pursuant to the Tenth Amendment to the United States Constitution, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

56.  Where the particular area of regulation is a field traditionally reserved to the states, federal power may only be invoked with "clear and manifest" Congressional purpose; otherwise, States' rights under the Tenth Amendment take precedence.

57.  Whether the involuntary medication of a psychiatric patient is viewed as an invocation of health and safety powers, police powers, or parens patriae powers, it clearly

11

implicates areas of regulation traditionally reserved to the states. *See Hillsborough County, Fla. v. Automated Medical Labs, Inc.*, 471 U.S. 707, 715 (1985) (health and safety is traditionally an area of state regulation); *In re Burrus*, 136 U.S. 586, 594 (1890) (*parens patriae* authority is traditionally a state function).

58. Neither the Veterans' Administration's general obligation to "provide a complete medical and hospital service" (38 U.S.C. § 1710), nor the federal government's constitutional authority "to build hospitals and homes for veterans" (*United States v. Oregon*, 366 U.S. 643, 648 (1961) (*citing* U.S. Const. Art. 1, Sec. 8)) carries with it concommitant authority to force unwanted psychotropic medications on patients in those facilities.

59. No federal statute or regulation evinces a specific congressional intent to authorize the Manhattan VA to administer psychotropic medications to civilian patients over their objections.

60. The VA was required by the 10th Amendment of the United States Constitution to follow New York's procedures for the administration of psychotropic medications to involuntary patients.

61. The VA's failure to follow New York's procedures before involuntarily injecting Mr. Bowers with Zyprexa violated his constitutional rights.

Fourth Claim

62. Paragraphs 1-61 are repeated and realleged as if fully set forth herein.

63. All involuntary psychiatric patients in New York, except for those who happen to be committed to Veterans' Hospitals, are entitled to the benefit of the procedures set forth in 14 NYCRR 527.8 before they are administered psychotropic medications over their objections.

64.   There is no rational basis for treating civilian veterans differently than all other involuntary psychiatric patients with regard to the administration of medication over their objections, particularly given that the VA has consented to follow New York's procedures for the involuntary commitment of such patients.

65.   The Manhattan VA violated Mr. Bowers' equal protection rights under the United States constitution by failing to afford him the benefit of the procedures prescribed by New York state law before injecting him with Zyprexa over his objection.

Prayer for Relief

WHEREFORE, plaintiffs respectfully pray that this court:

(1) grant an injunction prohibiting the VA from treating Mr. Bowers with any psychotropic medication over his objection, unless it first complies with the terms of 14 NYCRR § 527.8, and issue a declaration that henceforth the VA must adhere to New York law when administering medication to involuntary patients in New York over their objections; or, in the alternative,

(2) issue an injunction prohibiting the VA from treating Mr. Bowers with any psychotropic medication over his objection, unless it first provides him with notice, a hearing, and an opportunity for judicial review substantially as described in *Washington v. Harper*; and

(3) grant Mr. Bowers the sum of $1 in nominal damages for the violation of his constitutional rights, plus such punitive damages as may be deemed appropriate; and

(4) grant any other relief that the court deems just and proper.

Dated: February 8, 2008
      New York, New York

                           MARVIN BERNSTEIN, Director
                           Mental Hygiene Legal Service, First Dept.
                           S/
                           By:  Sadie Zea Ishee (SI-9540)
                           Senior Staff Attorney
                           60 Madison Avenue, 2nd Floor
                           New York, New York 10010
                           Phone:  (212) 779-1734